**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

Telogis, Inc.

             Plaintiff,

   vs.

Insight Mobile Data, Inc. d/b/a StreetEagle
and Does 1–10,

             Defendants.

Civil Action No. _____

**COMPLAINT AND JURY DEMAND**

Plaintiff Telogis, Inc. ("Telogis" or "Plaintiff") alleges as follows as its complaint against Defendant InSight Mobile Data, Inc. d/b/a StreetEagle ("InSight") and currently unidentified individuals and/or entities referred to herein as Does 1–10 (collectively, with InSight, "Defendants").

**NATURE OF ACTION**

1.      This is an action for permanent injunction, violation of the Maryland Uniform Trade Secrets Act, tortious interference with contractual relations, and unfair trade practices. Plaintiff seeks permanent injunctive relief, imposition of a constructive trust for improperly acquired profits, as well as compensatory and punitive damages, interest, and costs of the action including reasonable attorneys' fees.

2.      Defendants compete with Plaintiff in the market for location-based management solutions for mobile fleets and integrated resources. Defendants have engaged in a calculated and direct course of encouraging, aiding, and abetting Plaintiff's former employees to violate their contractual obligations to Plaintiff and to misappropriate Plaintiff's confidential and proprietary

information for use in soliciting Plaintiff's customers and potential customers for the benefit of

Defendants.

3.     Defendants have knowingly targeted and hired certain individuals who, by virtue

of their positions at Telogis and/or Navtrak (acquired by Telogis in 2012), had access to

sensitive, confidential, and proprietary information, including but not limited to customer lists,

pricing information, and information about the terms of contracts between Plaintiff and its

customers. Defendants are and were aware that each of these former employees was

contractually obligated to keep confidential and not misuse for their own or anyone else's benefit

any of Plaintiff's confidential or proprietary business information, specifically including

customer and pricing information. Defendants also are and were aware that certain of these

former employees had agreed contractually not to work for a competitor of Plaintiff for a

specified period of time in the event they left the employment of Plaintiff, and that the former

employees had further agreed contractually not to solicit Plaintiff's clients on behalf of

Defendants or any other competitor.

4.     Defendants encouraged Plaintiff's former employees to violate their agreements

with Plaintiff by (1) misappropriating Plaintiff's trade secrets and confidential business

information (including but not limited to pricing, purchasing habits, and other customer

information) and using it to obtain for Defendants an unfair advantage in competition with

Plaintiff; (2) soliciting or assisting with the solicitation of customers under contract with

Plaintiff; and (3) disparaging Plaintiff and Plaintiff's products and services.

5.     As a result of Defendants' conduct, Plaintiff has suffered and continues to suffer

damage to its business and to its goodwill.

## JURISDICTION AND VENUE

6.     This Court has personal jurisdiction over Defendants because they maintain a principal place of business in Maryland and because they regularly transact business in Maryland.

7.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because Plaintiff resides in a different state from Defendants and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because Defendants reside in Maryland and a substantial part of the events or omissions giving rise to the claims occurred in Maryland.

## THE PARTIES

9.     Plaintiff Telogis is a Delaware corporation, with its principal place of business at 20 Enterprise, Suite 100, Aliso Viejo, California 92656. Telogis is in the business of providing location-based management solutions for mobile fleets and integrated resources. On July 17, 2012, Telogis acquired Navtrak, a Delaware corporation based in Salisbury, Maryland. As a result of the acquisition, Telogis acquired all of Navtrak's contractual rights and all of Navtrak's trade secrets and confidential business information, including but not limited to, any and all information regarding Navtrak's customers which then became the customers of Telogis.

10.     On information and belief, Defendant InSight is a Maryland corporation with its principal place of business at 23330 Cottonwood Parkway, Suite 333, California, Maryland 20619. Defendant InSight is a direct competitor of Plaintiff.

11.     Does 1–10 are currently unidentified individuals and/or entities who, upon information and belief, also personally directed and/or participated in the wrongful and unlawful activities described herein. Plaintiff will amend the complaint to allege the fictitiously named defendants' true names and capacities when the same is ascertained.

## FACTS COMMON TO ALL COUNTS

12.     Karen F. Anderson ("Anderson") is an individual and resident of Maryland. Anderson was employed by Navtrak as an Account Executive beginning on March 14, 2005 and was responsible for sales throughout the Mid-Atlantic region. Through her employment and affiliation with Navtrak, Anderson worked with, and gained intimate knowledge of, Plaintiff's most strategic, valuable, and closely-held information, including but not limited to, financial information, customer contacts, pricing, expiration and other terms of contracts with customers, and Plaintiff's proprietary business methods (hereinafter collectively "Confidential Business Information"). Anderson had access to, and in many instances participated in, the formulation of this Confidential Business Information. Plaintiff kept this information confidential at all times.

13.     On or about March 15, 2005, Anderson signed an Executive Employment Agreement (the "Anderson Employment Agreement") with Navtrak attesting to the following:

> At all times during my employment and thereafter, I will hold in **strictest confidence** and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information … [which includes] information regarding plans for research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers; and other financial and business information of the Company.

Anderson further agreed:

> [T]hat for the period of my employment by the Company and for one (1) year after the date my employment by the Company ends for any reason … I will not, directly or through others, **solicit any customers of the Company with whom I had contact or whose identity I learned as a result of my employment with the Company**.

14.     Anderson's employment with Navtrak ended on July 16, 2012. On or about July 17, 2012, Anderson signed a General Release Agreement (the "Anderson Release") in consideration of substantial severance benefits from Plaintiff. As part of the agreement, Anderson promised to not "criticize, denigrate, or otherwise disparage [Plaintiff] or any of [its] products, processes, experiments, policies, practices, standards of business conduct, or areas of techniques of research."

15.     Immediately after Anderson's employment with Navtrak ended, she went to work for Defendant InSight in a sales position operating in same geographic region as she did while employed with Navtrak.

16.     James L. Healy ("Healy") is an individual and resident of Rhode Island. Healy was employed by Navtrak beginning March 1, 2004 as a Sales Manager responsible for the New England region. Through his employment and affiliation with Navtrak, Healy worked with, and gained intimate knowledge of Plaintiff's Confidential Business Information. Healy had access to, and in many instances participated in, the formulation of this Confidential Business Information. Plaintiff kept this information confidential at all times.

17.     On or about July 1, 2001, Healy signed an Executive Employment Agreement (the "Healy Employment Agreement") with Navtrak attesting to the following:

> [D]uring the Employment Period and for a period eighteen (18) months following the termination or expiration thereof, the Executive will not directly or indirectly … ***solicit, divert or take away, or attempt to divert or to take away, the business or patronage of any of the clients, customers or accounts of the Company*** or its affiliates that were clients, customers or accounts of the Company while the Executive was employed by the Company.

18.     Healy's employment with Navtrak ended on July 13, 2012. On or about July 14, 2012, Healy signed a General Release Agreement (the "Healy Release") in consideration of

substantial severance benefits from Plaintiff. As part of the agreement, Healy promised to not

"criticize, denigrate, or otherwise disparage [Plaintiff] or any of their products, processes,

experiments, policies, practices, standards of business conduct, or areas of techniques of

research."

19.     Immediately after Healy's employment with Navtrak ended, he went to work for

Defendant InSight in a senior executive position overseeing sales throughout the region he

managed while employed with Navtrak.

20.     Joseph Sullivan ("Sullivan") is an individual and resident of Massachusetts.

Sullivan was employed by Navtrak as an Account Executive beginning on March 3, 2008 and

was responsible for sales throughout the Boston metropolitan region. Sullivan reported directly

to the Vice President of Sales. Through his employment and affiliation with Navtrak, Sullivan

worked with, and gained intimate knowledge of Plaintiff's Confidential Business Information.

Sullivan had access to, and in many instances participated in, the formulation of this Confidential

Business Information. Plaintiff kept this information confidential at all times.

21.     On or about February 12, 2008, Sullivan signed an Executive Employment

Agreement  (the "Sullivan Employment Agreement") with Navtrak attesting to the following:

> At all times during my employment and thereafter, I will hold in ***strictest confidence*** and
> will not disclose, use, lecture upon or publish any of the Company's Proprietary
> Information … [which includes] information regarding plans for research, development,
> new products, marketing and selling, business plans, budgets and unpublished financial
> statements, licenses, prices and costs, suppliers and customers; and other financial and
> business information of the Company.

Sullivan further agreed:

> [T]hat for the period of my employment by the Company and for one (1) year after the
> date my employment by the Company ends for any reason … I will not, directly or

through others, ***solicit any customers of the Company with whom I had contact or whose identity I learned as a result of my employment with the Company***.

22.     Sullivan's employment with Navtrak ended on July 13, 2012. On or about July 16, 2012, Sullivan signed a General Release Agreement (the "Sullivan Release") in consideration of substantial severance benefits from Plaintiff. As part of the agreement, Sullivan promised to not "criticize, denigrate, or otherwise disparage [Plaintiff] or any of their products, processes, experiments, policies, practices, standards of business conduct, or areas of techniques of research."

23.     Immediately after Sullivan's employment with Navtrak ended, he went to work for Defendant InSight in a sales position operating in same geographic region as he did while employed with Navtrak.

24.     Chris Schiraldi ("Schiraldi") is an individual and resident of New Jersey. Schiraldi was employed by Navtrak as an Account Executive beginning on or about December 19, 2005. Schiraldi was responsible for sales in and around the New Jersey region and reported directly to the Senior Vice President of Navtrak. Through his employment and affiliation with Navtrak and Telogis, Schiraldi worked with, and gained intimate knowledge of Plaintiff's Confidential Business Information. Schiraldi had access to, and in many instances participated in, the formulation of this Confidential Business Information. Plaintiff kept this information confidential at all times.

25.     On or about March 3, 2008, Schiraldi signed an Executive Employment Agreement (the "Schiraldi Employment Agreement") with Navtrak attesting to the following:

> At all times during my employment and thereafter, I will hold in ***strictest confidence*** and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information … [which includes] information regarding plans for research, development,

new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers; and other financial and business information of the Company.

Schiraldi further agreed:

[T]hat for the period of my employment by the Company and for one (1) year after the date my employment by the Company ends for any reason … I will not, directly or through others, ***solicit any customers of the Company with whom I had contact or whose identity I learned as a result of my employment with the Company***.

Schiraldi further promised:

[T]hat for the period of my employment with the Company and for two (2) years after the later of (i) the date my employment ends for any reason … I will not provide services, similar to those I provided to the Company, to any person or entity in competition with the Company within the United States of America.

26.     On or about July 12, 2012, Schiraldi accepted employment with Telogis and signed a Proprietary Information Agreement (the "Schiraldi Proprietary Information Agreement"). As part of the agreement, Schiraldi again agreed to "***hold in strictest confidence***" Plaintiff's confidential and proprietary information and further agreed to not solicit Plaintiff's customers for one year after the date employment with the company ends for any reason.

27.     Schiraldi ended his employment with Telogis and immediately went to work for Defendant InSight in a sales position operating in same geographic region as he did while employed with Plaintiff.

28.     During their respective employment tenures with Navtrak and/or Telogis, each of Anderson, Healy, Sullivan, and Schiraldi (collectively, the "Restricted Executives") had extensive contact with Plaintiff's customers. As executives involved in sales and sales management, each of the Restricted Executives developed relationships and goodwill with Plaintiff's customers on behalf of and for the exclusive benefit of Plaintiff.

29.     While employed by Defendant InSight, and within one year of the last day of employment with either Navtrak or Telogis, each of the Restricted Executives personally solicited, or assisted in the solicitation of, Plaintiff's customers whom they serviced while working for Telogis and/or Navtrak. On information and belief, Defendants had knowledge of and encouraged each of the Restricted Executives to use Plaintiff's Confidential Business Information to solicit, either directly or indirectly, Plaintiff's customers and potential customers.

30.     For example, on information and belief, Sullivan used Plaintiff's Confidential Business Information to solicit Plaintiff's customers including Equipment for Rent, New Horizons, Education Connection, and Patriot Disposal with whom he had been in contact previously on behalf of Navtrak. Similarly, Anderson used Plaintiff's Confidential Business Information to solicit Plaintiff's customers with whom she had serviced during her employment with Navtrak including Fort Myers Construction, PMC, and Cabling Systems, Inc.

## COUNT I

(Violation of Maryland Uniform Trade Secrets Act)

31.     Plaintiff repeats, alleges, and incorporates by reference paragraphs 1 through 30 of this Complaint as if fully set forth herein.

32.     Plaintiff asserts a claim of misappropriation under the Maryland Uniform Trade Secrets Act, Md. Com. L. Code, §§ 11-1201 et seq.

33.     On information and belief, the Restricted Executives have taken positions with Defendant InSight and, on behalf of and at the direction of Defendants, are directly engaged in competitive efforts against Plaintiff.

34.     The Restricted Executives learned Plaintiff's Confidential Business Information, such as customer lists, client contact information, contract terms, and pricing information that are trade secrets of Plaintiff. The Restricted Executives knew or had reason to know that these trade secrets were vital to the commercial success of Plaintiff and were closely guarded as secret information by Plaintiff. The Restricted Executives each had a duty to maintain this information as secret.

35.     At the request and insistence of Defendants, the Restricted Executives have violated and inevitably will continue to violate these duties by disclosing and using Plaintiff's trade secrets and other Confidential Business Information for the benefit of Defendants in violation of the Maryland Uniform Trade Secrets Act.

36.     Defendants improperly acquired and used Plaintiff's trade secrets and Confidential Business Information obtained from the Restricted Executives while knowing or having reason to know that Plaintiff's trade secrets and Confidential Business Information were acquired by improper means. Defendants have actively sought this information and directly benefitted from the willful and malicious acts of the Restricted Executives and others.

37.     Defendants knew or should have known that the Restricted Executives owed a duty to Plaintiff to maintain the secrecy of Plaintiff's trade secrets and Confidential Business Information.

38.     As a direct and proximate result of Defendants' violations of the Maryland Uniform Trade Secrets Act, Plaintiff has suffered, continues to suffer, or imminently will suffer irreparable damage to its business and to its goodwill.

## COUNT II

(Tortious Interference with Contractual Relations)

39.     Plaintiff repeats, alleges, and incorporates by reference paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40.     The Anderson Employment Agreement, Healy Employment Agreement, Sullivan Employment Agreement, Schiraldi Employment Agreement, Anderson Release, Healy Release, Sullivan Release, and Schiraldi Proprietary Information Agreement each are valid and enforceable contracts.

41.     All or substantially all of Plaintiff's executives, including sales representatives and sales managers, have signed agreements that prohibit them from disclosing Plaintiff's Confidential Business Information and from soliciting Plaintiff's customers for at least one year after the last day of employment with either Navtrak or Telogis.

42.     The Schiraldi Employment Agreement further prohibits Schiraldi from providing services, similar to those he provided to Plaintiff, to any competitor of Plaintiff for two years after the last day of employment with Plaintiff.

43.     Defendants, although specifically aware of these agreements, intentionally, improperly, recklessly, negligently, and unjustifiably induced or attempted to induce the Restricted Executives and others to breach their contracts with Plaintiff. Defendants maliciously intended to, and actually did interfere improperly with Plaintiff's economic relationships and business expectations.

44.     As a result of Defendants' interference, the Restricted Executives have breached their contracts with Plaintiff.

45.     As the result of these multiple and repeated breaches, Plaintiff has suffered and continues to suffer damage to its business and to its goodwill.

## COUNT III

(Unfair Competition)

46.     Plaintiff repeats, alleges, and incorporates by reference paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47.     Defendants have obtained through the efforts of the Restricted Executives and others, Plaintiff's trade secrets and Confidential Business Information including but not limited to information about Plaintiff's clients, contracts, and pricing. On information and belief, Defendants have been using Plaintiff's trade secrets and Confidential Business Information to solicit Plaintiff's customers and potential customers in competition with Plaintiff.

48.     On information and belief, these unfair practices have resulted in Plaintiff's customers switching their service contracts to Defendant InSight. On information and belief, Defendants currently intend to employ these unfair tactics to underbid Plaintiff in future solicitation of Plaintiff's customers.

49.     Defendants' aforementioned activities have injured Plaintiff, which has suffered both general and special damages (*e.g.*, lost revenue, lost profits, and diminished goodwill among its customers) as a direct result of Defendants' activities, and were conducted with

purposeful disregard of the rights of Plaintiff to be free of unfair competition and fraudulent and deceptive practices.

## COUNT IV

(Injunctive Relief)

50.     Plaintiff repeats, alleges, and incorporates by reference paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     Defendants' conduct, as described above, presents a substantial and imminent threat of ongoing improper use and/or disclosure of Plaintiff's trade secrets and Confidential Business Information in violation of the Maryland Uniform Trade Secrets Act. Plaintiff will suffer imminent and irreparable harm from such improper use and/or disclosure. Accordingly, Plaintiff is entitled to the issuance of an injunction against such inevitable use and/or disclosure pursuant to Md. Stat. Ann., Com. Law § 11-1202(a).

**WHEREFORE**, Plaintiff prays:

52.     That Defendants be permanently enjoined from disclosing, using, or seeking to obtain Plaintiff's trade secrets and Confidential Business Information;

53.     That the Court impose on Defendant InSight a constructive trust comprised of all of the profits obtained by virtue of its use of Plaintiff's trade secrets and Confidential Business Information in obtaining sales to customers or prospective customers of Plaintiff;

54.     That Plaintiff be awarded damages, including but not limited to, actual, special, and compensatory damages, in an amount to be determined at trial but not less than $75,000, plus costs, attorneys' fees, and interest;

55.     That Plaintiff be awarded punitive damages in an amount to be determined at trial;

56.     That Plaintiff be awarded exemplary damages as defined under the Maryland Uniform Trade Secrets Act in an amount to be determined at trial; and

57.     That the Court award Plaintiff such other and further relief as the Court may determine is appropriate.

## DEMAND FOR JURY TRIAL

58.     Plaintiff demands trial by jury in this action of all issues so triable.

Dated: February 25, 2014                          By: _____
                                                       Charles A. Patrizia
                                                       charlespatrizia@paulhastings.com
                                                       PAUL HASTINGS LLP
                                                       875 15th Street, N.W.
                                                       Washington, DC 20005
                                                       Telephone:  1(202) 551-1700
                                                       Facsimile:   1(202) 551-1705

                                                       Glenn D. Dassoff
                                                       glenndassoff@paulhastings.com
                                                       Benjamin M. Cutchshaw
                                                       bencutchshaw@paulhastings.com
                                                       PAUL HASTINGS LLP
                                                       695 Town Center Drive
                                                       Seventeenth Floor
                                                       Costa Mesa, CA 92626-1924
                                                       Telephone:  1(714) 668-6200
                                                       Facsimile:   1(714) 979-1921

                                                       Attorneys for Plaintiff
                                                       Telogis, Inc.