IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

|  |  |  |
|---|---|---|
| **TELOGIS, INC.** | * | |
| Plaintiff, | * | |
| v. | | Case No.: PWG-14-563 |
| | * | |
| **INSIGHT MOBILE DATA, INC.,** | | |
| **d/b/a STREETEAGLE,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Telogis, Inc. and Defendant InSight Mobile Data, Inc. d/b/a StreetEagle ("InSight") are competing companies that provide "location-based management solutions for mobile fleets and integrated resources." [1] Compl. ¶ 2, ECF No. 1. InSight "knowingly targeted and hired certain individuals who, by virtue of their positions at Telogic and/or Navtrak (acquired by Telogis in 2012), had access to sensitive, confidential, and proprietary information," *id.* ¶ 3, and those individuals, encouraged by Defendant, solicited Plaintiff's customers, in violation of the agreements they entered into with Telogis and Navtrak, *id.* ¶¶ 4, 11, 29. Plaintiff filed suit against Defendant and unnamed individuals, claiming misappropriation of trade secrets, tortious interference with contractual relations, and unfair competition, and seeking injunctive relief. *Id.* ¶¶ 32, 42–45, 47–49, 51. At this juncture, I must determine whether to grant the Motion to Dismiss that Defendant filed.[2] Because Plaintiff has stated plausible claims for

---

[1] For purposes of considering Defendant's Motion to Dismiss, this Court accepts as true the facts that Plaintiff alleged in the Complaint. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

[2] Defendant's Motion to Dismiss, ECF No. 19, is fully briefed. ECF Nos. 19-1, 20, 22. A hearing is unnecessary. *See* Local Rule 105.6.

misappropriation, tortious interference with contractual relations, and unfair competition, Defendant's Motion IS DENIED.

## I.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

## II.    DISCUSSION

### A. Modifications to Non-Competition Clauses of Agreements

In Defendant's view, "[t]he heart of the complaint turns on alleged breaches of restrictive covenants by four former Telogis employees." Def.'s Mem. 11. Plaintiff's Complaint describes three account executives and a sales manager for Navtrak (the "Employees") who went on to

work for InSight. They all had signed executive employment agreements ("Agreements") upon beginning their employment with Navtrak. Compl. ¶¶ 12–13, 16–17, 20–21, 24–25. Three of the Agreements provided that the Employees would maintain the confidentiality of the Company's Proprietary Information, and all of them provided that, for periods ranging from one to two years, the Employees would "not . . . solicit any customers of the Company with whom [they] had contact or whose identity [they] learned as a result of [their] employment with the Company." *Id.* ¶¶ 3, 13, 17, 21, 25; *see* Anderson Agr. ¶ 7 & Ex. G ¶¶ 1 & 5, Sullivan Agr. ¶ 7 & Ex. G ¶¶ 1 & 5, Healy Agr. ¶¶ 7.1 & 8.1(b), Def.'s Mem. Ex. 1–3, ECF Nos. 19-3–19-5. At least two of the Agreements included non-competition clauses, Compl. ¶ 3, which provided that "for the period of two (2) years after . . . the date my employment ends for any reason . . . , I will not provide services, similar to those I provided to the Company, to any person or entity in competition with the Company within the United States of America," Anderson Agr. ¶ 7 & Ex. G ¶ 6; Sullivan Agr. ¶ 7 & Ex. G ¶ 6. Upon ending their employment, three of the Employees signed releases, which provided that the Employees would not "criticize, denigrate, or otherwise disparage [Plaintiff] or any of [its] products, processes, experiments, policies, practices, standards of business conduct, or areas of techniques of research." Compl. ¶¶ 14, 18, 22.

The Employees began working for InSight "[i]mmediately after [their] employment with Navtrak ended," in positions in which they were "directly engaged in competitive efforts against Plaintiff," and their work covered the "same geographic region." Compl. ¶¶ 15, 19, 23, 27, 33. Insight knew that some of the Agreements included non-competition and non-solicitation clauses, and was "aware that each of these former employees was contractually obligated to keep confidential and not misuse for their own or anyone else's benefit any of Plaintiff's confidential or proprietary business information, specifically including customer and pricing information."

*Id.* ¶ 3.  Nonetheless, "[w]hile employed by Defendant InSight, and within one year of the last day of employment with either Navtrak or Telogis," these Employees, "encouraged" by Insight, each "personally solicited, or assisted in the solicitation of, Plaintiff's customers whom they serviced while working for Telogis and/or Navtrak." *Id.* ¶¶ 4, 11, 29.

Defendant argues that Telogis cannot enforce the non-competition clauses in three of the Employees' Agreements because the Agreements "were modified when they were laid off[1] to provide that . . . '[i]f Telogis did not offer [the employee] employment [when it acquired Navtrak,] then effective immediately prior to the Acquisition, [the employee's] obligations under the restrictive covenants relating to non-competition in the Employment Agreement [were] terminated.'"  Def.'s Mem. 2 (quoting Modification of Severance Benefits under Employment Agreement ("Modifications"), Def.'s Mem. Exs. 6–8, ECF Nos. 19-8–19-10).  Similarly, InSight contends that Telogis cannot enforce the non-competition clause in the fourth Employee's Agreement because "that agreement was terminated when Telogis acquired Navtrak" and the employee signed an "Employment Offer letter" that stated that he "agree[d] that contingent upon the acquisition of Navtrak by Telogis, [his] employment agreement [was] hereby cancelled . . . ." Def.'s Mem. 6.  Plaintiff counters that the Modifications were, in turn, qualified by the cover letter that accompanied them, Pl.'s Opp'n 3, which provided that the Modifications would release the Employees "from the 2-year covenant not to compete if [they were] in sales AND [they] were not offered a permanent job by Telogis," *id.* Ex. 1, ECF No. 20-1.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire &*

*Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011). It is axiomatic that the documents comprising a contract are integral to a complaint concerning a breach of that contract. *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 n.4 (D. Md. 2011).

I may consider the Agreements and Modifications in ruling on the Motion to Dismiss, given that they are integral to the complaint, *see id.*, particularly since Plaintiff does not challenge their authenticity. *See Sposato*, 2013 WL 1308582, at *2. Plaintiff, does however, challenge the scope and effect of the Modifications on the Agreements. *See* Pl.'s Opp'n 3. I note that the Modifications terminated the Employees' "obligations under the restrictive covenants relating to non-competition in the Employment Agreement," Modifications 1, and that "Exhibit G – Proprietary Information, Inventions, and Non-Competition" to the Agreements contained a "Non-Compete Provision," as well as a separate clause proscribing "Solicitation of Employees, Consultants, Contractors or Customers," *e.g.*, Anderson Agr. Ex. G ¶¶ 5–6. It is unclear whether the Modifications terminated only the Non-Compete Provision or also the related provision about solicitation. Consequently, the Agreements and Modifications are "not so clear and unambiguous . . . that the Court can dismiss Plaintiff['s] claims as a matter of law at this early stage of litigation. Rather, the Court anticipates that discovery and the introduction of extrinsic evidence," such as the cover letter, may clarify the import of the Modifications. *See Key Tidewater Ventures LLC v. PNC Bank, N.A.*, No. JKB-14-2170, 2014 WL 5306716, at *4

(D. Md. Oct. 15, 2014). Thus, based on the information in the record, the Modifications have not been shown to prevent Plaintiff from stating a claim or to provide a basis for dismissal. *See id.*; *Iqbal*, 556 U.S. at 678–79; Fed. R. Civ. P. 12(b)(6).

### B. Misappropriation (Count I)

Plaintiff claims that Defendants misappropriated its trade secrets in violation of the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann., Com. Law § 11-1201. Compl. ¶ 32.

> MUTSA defines misappropriation of trade secrets as: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent...." Md. Code Ann., Comm. Law § 11-1201(c). Thus, a plaintiff can state a claim for misappropriation simply by demonstrating that the defendant acquired its trade secret by improper means, even if the plaintiff cannot show use of that trade secret.

*Systems 4, Inc. v. Landis & Gyr, Inc.*, 8 F. App'x 196, 200 (4th Cir. 2001). A "trade secret" is information that

> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Com. Law § 11–1201(e).

Plaintiff identifies as trade secrets its "Confidential Business Information, such as customer lists, client contact information, contract terms, and pricing information." Compl. ¶ 34. It alleges that this information was "closely guarded as secret information by Plaintiff" and that the employees who were privy to this information "each had a duty to maintain this information as secret." *Id.* It also claims that "Plaintiff kept this information confidential at all times." *Id.*

¶ 12.  Through these assertions, Plaintiff has alleged sufficiently, for purposes of the pending motion, that the information at issue qualifies as trade secrets.  *See* Com. Law § 11–1201(e).

Plaintiff claims that "Defendants improperly acquired and used Plaintiff's trade secrets and Confidential Business Information obtained from the [Employees] while knowing or having reason to know that Plaintiff's trade secrets and Confidential Business Information were acquired by improper means."  Compl. ¶ 36.  Specifically, Telogis alleges that the Employees "learned Plaintiff's Confidential Business Information, such as customer lists, client contact information, contract terms, and pricing information that are trade secrets of Plaintiff" while working for Navtrak and/or Telogis; "knew or had reason to know that these trade secrets were vital to the commercial success of Plaintiff and were closely guarded as secret information by Plaintiff"; "had a duty to maintain this information as secret," *id.* ¶ 34; and then "disclos[ed] and us[ed] Plaintiff's trade secrets and other Confidential Business Information for the benefit of Defendants," at Defendants' "request and insistence," *id.* ¶ 35.  Plaintiff has stated a plausible claim for misappropriation of trade secrets by InSight.  *See* Com. Law § 11-1201(c); *Systems 4, Inc.*, 8 F. App'x at 200.

### C.  Tortious Interference with Contractual Relations (Count II)

Plaintiff claims that Defendants tortiously interfered with its contractual relations. Compl. ¶¶ 42–45.  The elements of tortious interference with contractual relations are "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff."  *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (Md. Ct. Spec. App. 1991); *see K & K Mgmt. v. Lee,* 557 A.2d 965, 973 (1989). Plaintiff sufficiently alleges each of these elements to state a plausible claim.  *See* Compl. ¶¶ 12–

14, 16–18, 20–22 & 24–26 (describing Agreements between Telogis and Employees); *id.* ¶¶ 29 & 43 (alleging that InSight knew about the Agreements and intentionally interfered with them); *id.* ¶¶ 29, 30 & 44 (alleging that the Employees breached the Agreements and describing breaches by Sullivan and Anderson); *id.* ¶¶ 45 (alleging that Telogis suffered damages).

### D.  Unfair Competition (Count III)

In Count III, Plaintiff alleges that "Defendants have obtained through the efforts of [the Employees] and others, Plaintiff's trade secrets and Confidential Business Information including but not limited to information about Plaintiff's clients, contracts, and pricing" and "have been using Plaintiff's trade secrets and Confidential Business Information to solicit Plaintiff's customers and potential customers in competition with Plaintiff."  Compl. ¶ 47.  Noting that, although the claim refers to "Confidential Business Information" as well as trade secrets, the terms used to define "Confidential Business Information" in the Complaint "fall[] squarely and entirely within the definition of trade secrets in Section 11-1201(e) of the Act," Defendant argues that this claim should be dismissed because the MUTSA "'provides the exclusive civil remedy for misappropriation of a trade secret, "displacing conflicting tort, restitutionary, and other law of [Maryland]" that provides civil remedies for such conduct.'"  Def.'s Mem. 10–11 (quoting *Lejeune v. Coin Acceptors, Inc.*, 381 Md. 288, 305; 849 A.2d 451, 461 (2004)). Plaintiff counters that "the statute exempts contractual remedies and '[o]ther civil remedies that are not based upon misappropriation of a *trade secret*,'" such that a plaintiff may plead in the alternative in case "information fails to qualify as a trade secret." Pl.'s Opp'n 10 (quoting Com. Law § 11-1207(b)) (emphasis added).  Plaintiff asserts that it is for the Court, and not the parties, to determine what qualifies as a trade secret.  *Id.* at 10 n.4.

8

It is true that information that "does not qualify as a 'trade secret' . . . falls outside of MUTSA protection." *Allstate Ins. Co. v. Warns*, No. CCB-11-1846, 2013 WL 6036694, at *5 (D. Md. Nov. 12, 2013); *see Structural Pres. Sys., LLC v. Andrews*, No. MJG-12-1850, 2013 WL 3820023, at *5 (D. Md. July 23, 2013) (concluding that "claims based on Proprietary Information that is not a MUTSA trade secret . . . are not preempted by the MUTSA"). Further, "'[t]he existence of a trade secret is a conclusion of law based upon the applicable facts.'" *Structural Pres. Sys.*, 2013 WL 3820023, at *5 (quoting *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 661 (4th Cir. 1993)). *Swedish Civil Aviation Administration ("SCAA") v. Project Management Enterprises, Inc. ("PMEI")*, 190 F. Supp. 2d 785 (D. Md. 2002), which Defendant dismisses as "inapposite," Def.'s Reply 7, actually is anything but, and is quite informative with regard to pleading alternative claims to a misappropriation of trade secrets claim. There, SCAA alleged that the information at issue was a trade secret for purposes of its first count for misappropriation of confidential information under the MUTSA. *SCAA*, 190 F. Supp. 2d at 799–800. SCAA then alleged that the defendant breached its duty of a confidential relationship in its seventh count, and PMEI argued for dismissal, insisting that the MUTSA preempted the claim. *Id.* at 801. This Court observed that, "in the context of this count [for breach of duty], SCAA has not claimed that the confidential information appropriated by PMEI in allegedly breaching its confidential relationship with SCAA was a trade secret," and it rejected the defendant's argument that "SCAA should be held to its characterization in Count I of the confidential information allegedly appropriated by it as a trade secret." *Id.* at 802. The Court denied the motion to dismiss Count VII, reasoning that the plaintiff could "plead in the alternative under the liberal federal pleading standards." *Id*.

Here, likewise, in Count III, Plaintiff claims that Defendants obtained and unfairly used not only Plaintiff's trade secrets, but also Plaintiff's "Confidential Business Information," Compl. ¶ 47, which suggests that the "Confidential Business Information" is separate from the trade secrets.  Although Plaintiff defines Confidential Business Information as "Plaintiff's most strategic, valuable, and closely-held information, including but not limited to, financial information, customer contacts, pricing, expiration and other terms of contracts with customers, and Plaintiff's proprietary business methods," *id.* ¶ 12, any and all of which could qualify as trade secrets, *see* Com. Law § 11–1201(e), that does not mean that Plaintiff's Confidential Business Information necessarily all qualifies as trade secrets.  Therefore, this alternative pleading is permitted. *See Swedish Civil Aviation Admin.*, 190 F. Supp. 2d at 792, 802.

### E.  Injunctive Relief (Count IV)

Plaintiff's fourth count is for "Injunctive Relief."  "Injunctive relief is a remedy, not a separate cause of action . . . ."  *MCS Servs., Inc. v. Jones*, No. WMN-10-1042, 2010 WL 3895380, at *1 n.4 (D. Md. Oct. 1, 2010).  Insofar as Plaintiff asserts injunctive relief as a separate cause of action, that count is dismissed.  *See id.*  But, insofar as Plaintiff seeks injunctive relief as a remedy for its other causes of action, the request remains a part of the Complaint.  *See id.* (noting that request for injunctive relief "need not be addressed" on motion to dismiss).

## III.  CONCLUSION

In sum, Defendant's Motion to Dismiss, ECF No. 19, IS DENIED because Plaintiff has stated plausible claims for misappropriation, tortious interference with contractual relations, and unfair competition.  *See* Fed. R. Civ. P. 12(b)(6); *Iqbal*, 556 U.S. at 678–79; *Velencia*, 2012 WL 6562764, at *4.


Dated: December 19, 2014                                             /S/
                                                                    Paul W. Grimm
                                                                    United States District Judge

lyb